

**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

April 5, 2005

Frank Louderback, Esq.
150 Second Ave., North
Suite 840
St. Petersburg, FL 33701

     Re:  <u>Christos Kyriazis</u>

Dear Mr. Louderback:

    This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Christos Kyriazis ("Kyriazis"), in connection with his scheme to defraud Evelyn G. Birnie of nearly $1 million.  The Agreement is as follows:

    1.   <u>Waiver of Indictment and Plea</u>

    At the earliest practicable date but in no event later than May 13, 2005, Kyriazis shall waive indictment and plead guilty to an Information charging him with one count of mail fraud in violation of 18 U.S.C. §1341 and one count of interstate transportation of property taken by fraud in violation of 18 U.S.C. §2314.  Kyriazis expressly and unequivocally admits that he in fact knowingly, intentionally and willfully committed the crimes charged in the Information, and is in fact guilty of those offenses.  In addition, Kyriazis agrees to the accuracy of the attached statement of facts.

    2.   <u>Penalties</u>

    Kyriazis faces the following maximum penalties: 1) for the mail fraud count:  20 years in prison, a $250,000 fine, five years of supervised release, a $100 special assessment and an order of restitution; and 2) for the interstate transportation of property taken by fraud count: 10 years in prison, a $250,000 fine, three years of supervised release, a $100 special

assessment and an order of restitution.

3.    Sentencing Guidelines

The sentence to be imposed upon Kyriazis is within the discretion of the sentencing Court, subject to the statutory maximum penalties set forth above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder, as modified by <u>United States v. Booker</u> and <u>United States v. Fanfan</u>, ____ U.S. ___ , 2005 WL 50108 (January 12, 2005).  In imposing the sentence, the Court must consult and take into account the United States Sentencing Guidelines, along with the other factors set forth in 18 U.S.C. §3553(a).

The parties will take the following positions at sentencing with respect to the application of the United States Sentencing Guidelines:

> 1) the mail fraud and interstate transportation of property taken by fraud offenses should be grouped, pursuant to U.S.S.G. §3D1.2;  2) the sentencing guidelines effective as of November 1, 2003 apply; 3) the applicable sentencing guideline is §2B1.1; 4) the base offense level is 7, because the offense of conviction has a statutory maximum term of imprisonment of 20 years or more, pursuant to §2B1.1(a)(1)(B); 5) the total loss or intended loss is approximately $975,000, for a 14 level increase, pursuant to §2B1.1(b)(1)(H); and 6) the offense involved a vulnerable victim, pursuant to §3A1.1(b)(1).  The parties agree, therefore, that the total offense level, before any reduction for acceptance of responsibility, is a level 23.  The parties further agree that Kyriazis's Criminal History Category is either II or III.

The U.S. Attorney and Kyriazis agree that there is no basis for a departure from the sentencing range established by the United States Sentencing Guidelines.  Accordingly, neither the U.S. Attorney nor Kyriazis will seek a departure on any ground from the Sentencing Guidelines.

The U.S. Attorney expressly reserves the right to seek an upward departure pursuant to U.S.S.G. §4A1.3 should any of Kyriazis's prior state convictions be vacated or Kyriazis's Criminal History Category otherwise change after the Information is filed in this case.  Thus, for example, the government may

2

contend that an upward departure under §4A1.3 is appropriate if a state-court conviction that existed at the time the Information is filed is vacated and that vacation alters Kyriazis's Criminal History Category.

Based on Kyriazis's prompt acceptance of personal responsibility for the offenses of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by three levels Kyriazis's Adjusted Offense Level under U.S.S.G. §3E1.1.

The U.S. Attorney specifically reserves the right not to recommend a reduction under U.S.S.G. §3E1.1 if, at any time between his execution of this Agreement and sentencing Kyriazis:

(a) Fails to admit a complete factual basis for the plea;

(b) Fails to truthfully admit his conduct in the offenses of conviction;

(c) Falsely denies, or frivolously contests, relevant conduct for which Kyriazis is accountable under U.S.S.G. §1B1.3;

(d) Fails to provide truthful information about his financial status;

(e) Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Kyriazis is accountable under U.S.S.G. §1B1.3;

(f) Engages in acts which form a basis for finding that Kyriazis has obstructed or impeded the administration of justice under U.S.S.G. §3C1.1;

(g) Intentionally fails to appear in Court or violates any condition of release;

(h) Commits a crime;

(i) Transfers any asset protected under any provision of this Agreement; and/or

(j) Attempts to withdraw his guilty plea.

3

Kyriazis expressly understands that he may not withdraw his plea of guilty if, for any of the reasons listed above, the U.S. Attorney does not recommend that he receive a reduction in Offense Level for acceptance of responsibility.

Kyriazis expressly understands that, in addition to declining to recommend an acceptance-of-responsibility adjustment, the Government may seek an upward adjustment pursuant to U.S.S.G. §3C1.1 if Kyriazis obstructs justice after date of this Agreement.

4.  Sentence Recommendation

The parties agrees to jointly recommend the following sentence before the District Court:

>  (a)  A sentence of 41 months in prison;
>
>  (b)  A fine at the low end of the applicable sentencing guideline range;
>
>  (c)  Restitution in the amount of approximately $975,000, less any amount otherwise recovered by the victim from Kyriazis or Tierra Verde Specialty Market.  Kyriazis agrees to submit to interviews and/or polygraph examinations as requested by the government (to be conducted by special agents of the Federal Bureau of Investigation), in order to assist the government in identifying and locating potential assets for payment to Kyriazis's victim;
>
>  (d)  A $200 mandatory special assessment; and
>
>  (e)  Five years of supervised release.

Kyriazis agrees that he will provide to the U.S. Attorney expert reports, motions, memoranda of law and documentation of any kind on which he intends to rely at sentencing not later than twenty-one days before sentencing.  Any basis for sentencing with respect to which all expert reports, motions, memoranda of law and documentation have not been provided to the U.S. Attorney at least twenty-one days before sentencing shall be deemed waived.

In the event of an appeal from, or collateral challenge to, Kyriazis's sentence, the U.S. Attorney reserves his right to argue the correctness of Kyriazis's sentence and the manner in which the District Court determines it.

4

5.    Payment of Mandatory Special Assessment

Kyriazis agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing, unless Kyriazis establishes to the satisfaction of the Court that Kyriazis is financially unable to do so.

6.    Protection of Assets for Payment of Restitution, Forfeiture and Fine

Kyriazis agrees not to transfer, or authorize the transfer of, any asset which has been restrained by Order of the Court in this case or any asset, whether or not restrained, which Kyriazis has agreed to forfeit pursuant to this Agreement.

Kyriazis agrees not to transfer, or authorize the transfer of any other asset in which he has an interest without prior express written consent of the U.S. Attorney, except for:

>        (1)    Assets subject to superior, secured interests of innocent third parties, in which Kyriazis has an equity interest of less than $2,000;
>
>        (2)    Ordinary living expenses necessary to house, clothe, transport and feed Kyriazis and those to whom he owes a legal duty of support, so long as such assets do not exceed $2,000 per month; and
>
>        (3)    Attorney's fees incurred in connection with this criminal case.

This prohibition shall be effective as of the date of Kyriazis's execution of this Agreement and continue until the fine, forfeiture and/or restitution ordered by the Court at sentencing is satisfied in full.

Kyriazis further agrees that, prior to sentencing, he will truthfully and accurately complete the sworn financial statement enclosed with this Agreement.

7.    Waiver of Rights to Appeal and to Bring Collateral Challenge

Kyriazis is aware that he has the right to challenge his sentence and guilty plea on direct appeal.  Kyriazis is also aware that he may, in some circumstances, be able to argue that his plea should be set aside, or his sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion

under 28 U.S.C. §2255).

In consideration of the concessions made by the U.S. Attorney in this Agreement, Kyriazis knowingly and voluntarily waives his right to appeal or collaterally challenge:

        (1)   Kyriazis's guilty plea and any other aspect of Kyriazis's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and

        (2)   The imposition by the District Court of a sentence which does not exceed that being recommended by the U.S. Attorney pursuant to this agreement.

Kyriazis's waiver of rights to appeal and to bring collateral challenges shall not apply to appeals or challenges based on new legal principles in First Circuit or Supreme Court cases decided after the date of this Agreement which are held by the First Circuit or Supreme Court to have retroactive effect.

If Kyriazis files a notice of appeal, other than for the reasons set forth in the preceding two paragraphs, it will be deemed a breach of this agreement for purposes of paragraph 12 below.

This Agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. §3742(b), and the U.S. Attorney therefore retains his appeal rights.

    8.    <u>Court Not Bound By Agreement</u>

The sentencing recommendations made by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the U.S. Probation Office or the sentencing judge. Within the maximum sentence which Kyriazis faces under the applicable law, the sentence to be imposed is within the sole discretion of the sentencing judge. Kyriazis's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(B). Kyriazis may not withdraw his plea of guilty regardless of what sentence is imposed. Nor may Kyriazis withdraw his plea because the U.S. Probation Office or the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the parties. In the event that the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the U.S. Attorney, the U.S. Attorney reserves the right to defend the sentencing judge's calculations and sentence in any

subsequent appeal or collateral challenge.

9.    Information For Presentence Report

Kyriazis agrees to provide all information requested by the U.S. Probation Office concerning his assets.

10.    Civil Liability

By entering into this Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, which Kyriazis may have incurred or may incur as a result of his conduct and his plea of guilty to the charges specified in paragraph one of this Agreement.

11.    Rejection of Plea By Court

Should Kyriazis's guilty plea not be accepted by the Court for whatever reason, or later be withdrawn on motion of Kyriazis, this Agreement shall be null and void at the option of the U.S. Attorney.

12.    Breach of Agreement

If the U.S. Attorney determines that Kyriazis has failed to comply with any provision of this Agreement, has violated any condition of his pretrial release, or has committed any crime following his execution of this Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Agreement in their entirety by notifying Kyriazis, through counsel or otherwise, in writing.  The U.S. Attorney may also pursue all remedies available to him under the law, irrespective of whether he elects to be released from his commitments under this Agreement.  Further, the U.S. Attorney may pursue any and all charges which have been, or are to be, dismissed pursuant to this Agreement.  Kyriazis recognizes that no such breach by him of an obligation under this Agreement shall give rise to grounds for withdrawal of his guilty plea.  Kyriazis understands that, should he breach any provision of this agreement, the U.S. Attorney will have the right to use against Kyriazis before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by him, and any information, materials, documents or objects which may be provided by him to the government subsequent to this Agreement, without any limitation.  In this regard, Kyriazis hereby waives any defense to any charges which he might otherwise have under any statute of limitations or the Speedy Trial Act.

7

13.  Who Is Bound By Agreement

This Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

14.  Complete Agreement

This letter contains the complete and only agreement between the parties.  No promises, representations or agreements have been made other than those set forth in this letter.  This Agreement supersedes prior understandings, if any, of the parties, whether written or oral.  This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the Agreement between the U.S. Attorney and Kyriazis, please have Kyriazis sign the Acknowledgment of Agreement below.  Please also sign below as Witness.  Return the original of this letter to Assistant U.S. Attorney Mark J. Balthazard.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
MICHAEL K. LOUCKS
Section Chief

MARK J. BALTHAZARD
Assistant U.S. Attorney

ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it with my attorney.  I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts.  I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them.  I am satisfied with the legal representation provided to me by my attorney.  We have had

8

sufficient time to meet and discuss my case.  We have discussed
the charges against me, possible defenses I might have, the terms
of this Plea Agreement and whether I should go to trial.   I am
entering into this Agreement freely, voluntarily, and knowingly
because I am guilty of the offenses to which I am pleading guilty
and I believe this Agreement is in my best interest.

CHRISTOS KYRIAZIS

Date: 4-15-05

    I certify that Christos Kyriazis has read this Agreement and
that we have discussed its meaning.  I believe he understands the
Agreement and is entering into the Agreement freely, voluntarily
and knowingly.

FRANK LOUDERBACK, ESQ.
Attorney for Christos Kyriazis

Date: 4-15-05

9

### STATEMENT OF FACTS

I, Christos Kyriazis, admit to the following facts in connection with the attached plea agreement:

I am 41 years old and currently live in St. Petersburg, Florida.

In 2001, I was introduced to Evelyn G. Birnie of Shrewsbury, Massachusetts.  I was informed that Mrs. Birnie was a widow over 90 years of age.

I told Mrs. Birnie that I was willing and able to invest her money on her behalf.  I led Mrs. Birnie to believe that I would invest any funds she gave me in safe and legitimate investments for her benefit.  I did so in order to gain access to Mrs. Birnie's money for my own personal and business purposes.  I eventually obtained about $975,000 from Mrs. Birnie, none of which I invested on her behalf and all of which I used for my own purposes.

In November 2002, I persuaded Mrs. Birnie to cash in one of her annuity accounts with a value in excess of $800,000 and to deposit the proceeds in her bank account.  My purpose was to have her free up money which I could then get access to.  In November and December 2002, I persuaded Mrs. Birnie to send a total of approximately $787,000, by wire and check, to an entity called "JGM Investment Group" in Beverly, Massachusetts.  I led Mrs. Birnie to believe that JGM Investment Group was a legitimate

1

investment company which would invest her funds safely in legitimate investment instruments for Mrs. Birnie's benefit. In fact, I knew that JGM Investment Group was simply the business name of "J.G.M. Numismatics," a store-front coin, stamp and jewelry dealer in downtown Beverly.

I arranged to purchase approximately 2,000 gold coins from J.G.M. Numismatics using about $700,000 of Mrs. Birnie's money. Most of the coins I picked up from J.G.M. Numismatics in person. However, in November 2002, I had the company mail two boxes containing about 100 coins each to me in Florida. I directed J.G.M. Numismatic to wire most of the remaining funds to two bank accounts in Florida. One of those accounts belonged to my landlord and the funds were used to pay my home rent for a year. The second account belonged to a car dealer and I used the proceeds to purchase a Porsche automobile for my personal use. J.G.M. Numismatic sent the remaining $3,600 to me personally by check.

I remained in contact with Mrs. Birnie after that and occasionally informed her, falsely, that her money was safely invested.

In August, 2004, I needed more money and decided to try to get it from Mrs. Birnie. I talked to Mrs. Birnie about an entity called the Tierra Verde Specialty Market, and told her, falsely, that it was a legitimate investment market and that funds sent to

2

it would be invested on her behalf in safe securities.  In fact,
the Tierra Verde Specialty Market is an entity located in Florida
which operates a small grocery store.  My mother operates the
store and is listed on the corporate records as being the owner
and holding most of the corporate positions.  In fact, I am the
real owner of the business and I control all its bank accounts.
On August 2 and August 17, I persuaded Mrs. Birnie to give me
checks from her personal account, each in the amount of $15,000,
payable to Tierra Verde.  I caused those checks to be deposited
in the Tierra Verde Specialty Market bank account and used the
funds for my own personal expenses.

In late August, 2004, I convinced Mrs. Birnie to "invest"
additional funds in Tierra Verde.  From my conversations with
her, I knew that Mrs. Birnie was receiving checks from her
legitimate annuity accounts.  I convinced her to sign over three
such checks, in the amounts of $58,155.18, $34,296.05 and
$56,130.28, to Tierra Verde.  I also convinced her to give me a
personal check for $7,000.  I told Mrs. Birnie that all of these
monies would be invested legitimately on her behalf.  Instead, I
returned to Florida with the checks, deposited them in the Tierra
Verde Specialty Market bank account and then used all of those
funds for my own personal and business purposes.

Mrs. Birnie has since requested that I return all of her
funds, but I have been unable to do so because I spent all the

3

money and none is left.

      Signed under the pains and penalties of perjury.

CHRISTOS KYRIAZIS

Date:  4-15-05

4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CRIMINAL NO. |
| | ) |
| CHRISTOS KYRIAZIS, | ) VIOLATIONS: |
| Defendant | ) 18 U.S.C. §1341 (MAIL FRAUD) |
| | ) 18 U.S.C. §3214 (INTERSTATE |
| | ) TRANSPORTATION OF PROPERTY TAKEN |
| | ) BY FRAUD) |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

## I.   BACKGROUND AND SCHEME TO DEFRAUD

1.   At all times material to this Information, defendant
**CHRISTOS KYRIAZIS** (**"KYRIAZIS"**) was an individual living in either
Massachusetts or Florida.

2.   Beginning in or about 2001, and continuing until in or
about August 2004, in the District of Massachusetts and
elsewhere, the defendant herein, **CHRISTOS KYRIAZIS**, did devise
and intend to devise a scheme and artifice to defraud and to
obtain money and property by means of materially false and
fraudulent pretenses, representations and promises.

3.   The scheme consisted essentially of **KYRIAZIS** obtaining
funds from an elderly widow living in Shrewsbury, Massachusetts
("the victim") by representing to her that he would invest her
funds for her benefit in legitimate and safe investments, but

1

instead using those funds for **KYRIAZIS**'s personal and business purposes.

4.   By this fraudulent scheme, **KYRIAZIS** obtained approximately $975,000 from the victim.

5.   In furtherance of this scheme, **KYRIAZIS** did the following, among other things:

a.   represented to the victim that he would invest her funds for her benefit in legitimate and safe investments;

b.   In or about November 2002, induced the victim to cash in a legitimate annuity with a value in excess of $800,000 and to deposit the proceeds in the victim's bank account;

c.   In November and December 2002, **KYRIAZIS** induced the victim to send a total of approximately $787,000 to an entity with the words "Investment Group" in its name. **KYRIAZIS** represented to the victim that the funds would be invested on behalf of the victim.   Instead, **KYRIAZIS** caused approximately $700,000 of the funds to be used to purchase approximately 2,000 gold coins, which **KYRIAZIS** took for his own personal use.   **KYRIAZIS** used the remainder of the funds to pay his personal home rental fee for a year and to purchase a Porsche automobile.

2

c.  On or about August 2, 2004, **KYRIAZIS** induced the victim
    to issue a $15,000 check drawn on her personal account
    to "Tierra Verde Spec. Inc," and caused those funds to
    be deposited in a bank account in that name. **KYRIAZIS**
    represented to the victim that the funds were for a
    legitimate investment for the benefit of the victim.
    In fact, Tierra Verde Spec. Inc. was at all times an
    entity located in Florida which operated a small
    grocery store.  Although not identified as an officer
    or director on the business's public records, **KYRIAZIS**
    at all times owned and controlled the business and its
    bank accounts.  **KYRIAZIS** used the victim's funds for
    his own personal purposes;

d.  On or about August 17, 2004, **KYRIAZIS** induced the
    victim to issue a $15,000 check drawn on her personal
    account to "Tierra Spec."  **KYRIAZIS** represented to the
    victim that the funds were for a legitimate investment
    for the benefit of the victim.  Thereafter, **KYRIAZIS**
    used the victim's funds for his own personal purposes;

e.  On or about August 28, 2004, **KYRIAZIS** induced the
    victim to issue a $7,000 check drawn on her personal
    account to **KYRIAZIS**.  **KYRIAZIS** represented to the
    victim that the funds were for a legitimate investment
    for the benefit of the victim.  Thereafter, **KYRIAZIS**

3

used the victim's funds for his own personal purposes;

f.      On or about August 30, 2004, **KYRIAZIS** induced the
victim to endorse over to "Tierra Verde Spec." three
checks she had received from legitimate annuity
accounts, specifically checks in the amounts of
$58,155.18, $34,296.05 and $56,130.28.  **KYRIAZIS**
represented to the victim that the funds were for a
legitimate investment for the benefit of the victim.
Thereafter, **KYRIAZIS** used the victim's funds for his
own personal purposes;

g.      When the victim and/or her representatives requested
the return of the funds she had given to **KYRIAZIS**, he
failed to return any of the funds.

## II.   COUNT 1 - MAIL FRAUD (18 U.S.C. §1341)

6.   The allegations contained in paragraphs 1-5 of this
Information are hereby re-alleged and incorporated by reference.

7.    On or about November 25, 2002, in the District of
Massachusetts and elsewhere, the defendant herein,

                        **CHRISTOS KYRIAZIS,**

for the purpose of executing the aforesaid scheme and artifice to
defraud and for obtaining money and property by means of
materially false and fraudulent pretenses, representations, and
promises, and attempting to do so, did cause to be placed in post
offices and authorized depositories for mail matter approximately

                                4

100 gold coins to be sent by mail by the United States Postal Service from J.G.M. Numismatic Investments in Beverly, Massachusetts, and did knowingly cause the articles to be delivered by the United States Postal Service, according to directions thereon, to **CHRISTOS KYRIAZIS** in St. Petersburg, Florida.

All in violation of Title 18, United States Code, Sections 1341 and 2.

### III. COUNT 2 - (ITSP) (18 U.S.C. §2314)

8.    The allegations contained in paragraphs 1-5 of this Information are hereby re-alleged and incorporated by reference.

9.    In or about the first two weeks of September 2004, the defendant herein,

**CHRISTOS KYRIAZIS,**

did transport, transmit and transfer in interstate commerce from Massachusetts to Florida goods, wares, merchandise, securities and money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; to wit, three

5

checks totaling approximately $148,581.51 obtained by the aforesaid scheme and artifice to defraud from his victim.

All in violation of Title 18, United States Code, Sections 2314 and 2.

MICHAEL J. SULLIVAN
United States Attorney

By: _____

MARK J. BALTHAZARD
Assistant U.S. Attorney

6